UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL SAFRAN,

    Plaintiff,

v.

Case No. 08-12366

Honorable Patrick J. Duggan

FRANK DONAGRANDI, L.D.S.
CONTRACTORS INC., and L.D.S.
CONTRACTORS INC. PENSION PLAN,

    Defendants.
_____/

## AMENDED OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 30, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

Paul Safran ("Plaintiff") filed this lawsuit against Frank Donagrandi ("Donagrandi"), L.D.S. Contractors Inc. ("LDS"), and L.D.S. Contractors Inc. Pension Plan (collectively "Defendants") on June 3, 2008, alleging that they violated their fiduciary duties in their maintenance and administration of a defined contribution pension plan under ERISA. Presently pending before the Court is Plaintiff's Motion for Summary Judgment filed on December 15, 2008. Defendants failed to respond to the motion. On January 12, 2009, the Court informed the parties that, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the motion would be decided without oral argument. For

the reasons set forth below, the Court grants Plaintiff's motion.

**I. Background**

Plaintiff is a former employee of LDS, a small Michigan construction company. During his employment, Plaintiff participated in a defined contribution pension plan whereby LDS agreed to contribute annually an amount equal to 10% of Plaintiff's gross annual salary to be maintained in an individual plan account. When the plan first began in 1988, Donagrandi's brother, a co-owner of LDS, was named as the plan trustee. In 1997, however, Donagrandi's brother died leaving Donagrandi as the sole owner of LDS. Although the plan documents were never amended, Donagrandi informally assumed responsibility for the pension plan authorizing payment of contributions from LDS, signing necessary paperwork for government filings, and delegating investment responsibility to Merrill Lynch.

Unfortunately, LDS's business began to decline a few years after the death of Donagrandi's brother. As owner, Donagrandi struggled to meet LDS's obligations and from 2002 to 2006 no contributions were made to the pension plan. At some point, Donagrandi even used funds from the pension plan comprising his own individual account to pay LDS debts.

During LDS's struggles, plan participants received annual account statements indicating what their individual account balance would have been had LDS made its annual contribution. The account statements did not reflect the fact that contributions had not actually been made. Meanwhile, LDS listed the unpaid contributions on its books as unfunded liabilities.

2

In 2006 LDS ceased operations. Although the corporation has never formally been dissolved, it no longer conducts business or holds assets. The pension plan account has been liquidated.

In this lawsuit, Plaintiff seeks to recover amounts allegedly owing to him under the terms of the pension plan. Although the suit was filed against Donagrandi, LDS, and the pension plan, Plaintiff's present motion for summary judgment addresses the personal liability of Donagrandi only. Plaintiff argues that Donagrandi was a fiduciary to the plan and that he breached his fiduciary duties by using plan assets to pay LDS obligations, by failing to authorize annual contributions from LDS, and by failing to disclose material circumstances and information regarding the status of the plan. Plaintiff seeks to recover his share of the liquidated plan account plus interest, unpaid contributions for 2002 to 2006, and attorney's fees.

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2).

### III. Liquidated Pension Plan Funds

According to records obtained from LDS's accountant, Plaintiff's individual plan account contained $31,541.37 when LDS stopped doing business in 2006. (Compl. Ex. B.) This amount consists of employer contributions until 2001 and relevant adjustments for investment gains and losses. (*Id.*) According to Donagrandi's deposition testimony, he offered the funds to Plaintiff upon liquidation of the pension plan account but Plaintiff refused to accept them while the amount owing under the terms of the pension plan remained in dispute. (Pl.'s Mot., Ex. B at 24.) Donagrandi has since been holding the funds in a personal account and estimates their value to be about $30,000. (*Id.*) Under the circumstances, there does not appear to be any dispute that Plaintiff is entitled to the funds that were contained in his personal plan account when the pension plan was liquidated. Therefore, the Court grants summary judgment to Plaintiff as to these funds. Plaintiff is directed to submit additional information to the Court to establish the interest he is entitled to by law.

### IV. Unpaid Contributions

Next, Plaintiff seeks to hold Donagrandi personally liable for LDS's unpaid contributions from 2002 to 2006. Plaintiff argues that Donagrandi acted as a fiduciary to the pension plan and that he breached his fiduciary duties. Under ERISA, plan fiduciaries are personally liable for losses resulting from breaches of their duties. 29 U.S.C. § 1109. A fiduciary will not be held personally liable, however, if the breach occurred before becoming or after ceasing to be a plan fiduciary. *Id.*

To succeed on his claim, Plaintiff must first establish that Donagrandi acted as a fiduciary. ERISA provides:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(a). Although Donagrandi was not named fiduciary in the plan documents, he admits that responsibility for the plan's administration and management fell to him after his brother's death in 1997. (Pl.'s Mot. Ex. B at 8.) The Court therefore concludes that Donagrandi acted as fiduciary with respect to the LDS pension plan.

To establish personal liability, Plaintiff argues, among other things, that Donagrandi breached his duty to disclose material circumstances and information regarding the plan. Plaintiff specifically argues that Donagrandi failed to inform him that LDS was not making annual contributions and that Donagrandi further misled him by issuing individual account statements that suggested that contributions had been made. "ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). Based on statutory language,

5

federal courts have recognized three components of the fiduciary duties imposed by ERISA. *Id.* First is the "duty of loyalty" requiring that decisions by a fiduciary regarding an ERISA plan "'be made with an eye single to the interests of the participants and beneficiaries.'" *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)); *see also* 29 U.S.C. § 1104(a). Second is the "prudent man" component which requires that a fiduciary, in carrying out the duty of loyalty, "act with the care, skill, prudence, and diligence that a prudent man acting in a like capacity would use in conducting an enterprise of like character." *Berlin*, 858 F.2d at 1162; *see also* 29 U.S.C. § 1104(a)(1)(B). Third and finally, "an ERISA fiduciary must act 'for the exclusive purpose' of providing benefits to plan beneficiaries." *Berlin*, 858 F.2d at 1162; *see also* 29 U.S.C. § 1104(a)(1)(A).

Derived from these components, the Sixth Circuit has held that an ERISA fiduciary has a duty to "give complete and accurate information in response to participants' questions." *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992). Furthermore, "misleading communications to plan participants regarding plan administration . . . will support a claim for breach of fiduciary duty" because "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1104 are owed." *Berlin*, 858 F.2d at 1163. Overall, this "'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" *Krohn*, 173 F.3d at 548 (quoting *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).

In his deposition testimony, Donagrandi admits that he never informed plan participants that contributions were not being made and that there was no way to tell from the individual account statements that the contributions had not been made. (Pl.'s Mot. Ex. B at 18-20.) Each year Plaintiff received an account statement reflecting a "total monetary value" and "vested monetary value" of his account that included LDS's annual contribution whether the contribution had been made or not. (*See* Pl.'s Mot. Ex. C.) For the years 2002 to 2006, these annual statements listed $24,900 worth of contributions that were never made. (Compl. Ex. B; Pl.'s Mot. Ex. C.) Then, in or around January 2007, Donagrandi forwarded Plaintiff's request for information about the status of the plan to LDS's accountant who issued duplicate account statements that again reflected the unpaid contributions. (Pl.'s Mot. Ex. B at 28.) On these facts, the Court concludes that Donagrandi misled plan participants to believe that LDS was making its annual contributions, that he failed to inform plan participants that contributions were not being made, and that he breached his duty to give complete and accurate information upon Plaintiff's inquiry. Because Donagrandi breached his fiduciary duties, he is personally liable for the unpaid contributions totaling $24,900 and Plaintiff is entitled to summary judgment.

**V. Attorney Fees**

Finally, Plaintiff requests that this Court exercise the discretion granted by 29 U.S.C. §1132(g)(1) and award him attorney fees. In deciding whether to award attorney fees under ERISA, the Court considers:

> (1) the degree of the opposing party's culpability or bad faith; (2) the

7

> opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). As is common, no single factor is determinative. *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008).

Although Plaintiff did not seek to confer a benefit on all plan participants, the other four factors support an award of attorney fees in his favor. Based on the evidence before the Court, the Court is satisfied that Donagrandi acted in bad faith by placing his and LDS's interests before that of the plan participants to whom he owed a duty of loyalty. As to ability to pay, Donagrandi testified at his deposition that the pension plan has been liquidated and that LDS no longer has accounts in its name. (Pl.'s Mot. Ex. B at 6, 25.) There is no evidence before the Court, however, suggesting that Donagrandi lacks the ability to pay. Furthermore, awarding attorney fees to Plaintiff will deter other business owners acting as plan administrators from forsaking their fiduciary duties for the benefit of their company. Finally, the merits of Plaintiff's case were strong enough to warrant summary judgment on his behalf. Accordingly, the Court finds that Plaintiff is entitled to reasonable attorney fees and Plaintiff is directed to submit appropriate evidence reflecting the reasonable fees incurred in this action.

**VI. Conclusion**

Plaintiff had a vested right to the pension plan funds held his individual account and

is therefore entitled to that portion of the liquidated pension funds.  Plaintiff has also established that Donagrandi breached his fiduciary duties in regard to the plan.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is awarded $31,541.37 as his portion of the liquidated pension plan account and $24,900.00 for unpaid contributions.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to interest as provided by law and reasonable attorney fees subject to his submission of appropriate proofs.

A judgment consistent with this order shall issue.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
David M. Hess, Esq.
Thomas C. Nemes, Esq.